# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | |
|---|---|
| ALEXANDRA JEWSEVSKYJ, | : |
| | : NO. 15-CV-03041-JHS |
| Plaintiff, | : |
| | : CLASS ACTION |
| vs. | : |
| | : |
| FINANCIAL RECOVERY | : |
| SERVICES, INC. | : |
| and | : |
| LVNV FUNDING, LLC | : |
| and | : |
| RESURGENT CAPITAL | : |
| SERVICES, LP | : |
| and | : |
| ALEGIS GROUP, LLC | : |
| | : |
| Defendant | : |

- - -

Oral deposition of BRIAN BOWERS, held at

the law offices of Flitter Milz, P.C., 450 North

Narberth Avenue, Suite 101, Narberth, Pennsylvania

19072, on Thursday, February 4, 2016, commencing

at 9:45 a.m., before Mary Ann Timko, Court

Reporter.

TIMKO COURT REPORTING
P.O. Box 1266
Philadelphia, Pennsylvania 19105
(215) 751-9003



```
 1    APPEARANCES:

 2         FLITTER MILZ, P.C.
           BY:   ANDREW M. MILZ, ESQUIRE
 3         450 North Narberth Avenue
           Suite 101
 4         Narberth, Pennsylvania 19072
           610 - 822-0782
 5         Attorney for Claimant

 6    MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
           BY:   RONALD M. METCHO, III, ESQUIRE
 7         2000 Market Street
           Suite 2300
 8         Philadelphia, Pennsylvania 19103
           Attorney for Defendant
 9         Financial Recovery Services, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

3

I N D E X

WITNESS:                                                    PAGE

BRIAN BOWERS

        By Mr. Milz                                           4

                        -   -    -

E X H I B I T S

NUMBER                   DESCRIPTION                      PAGE

FRS-1        Letter                                        10

FRS-2        Responses to Plaintiff's
             Interrogatories                               22

FRS-3        Responses to Plaintiff's First Request
             for Production of Documents                   39

FRS-4        Original letter
             (retained by Mr. Milz)                        44

FRS-5        Letter                                        54

FRS-6        Letter                                        55

FRS-7        Letter                                        63

BRIAN BOWERS

1              (It is hereby stipulated and agreed

2          by and between counsel that the reading,

3          signing, sealing, filing, and

4          certification of the deposition is waived;

5          and that all objections, except as to the

6          form of the question, are reserved until

7          the time of trial.)

8                    -   -   -

9              BRIAN BOWERS, having been first duly

10         sworn, was examined and testified as

11         follows:

12                   -   -   -

13    BY MR. MILZ:

14    Q.      Sir, could you state and spell your name

15    for the court reporter, please?

16    A.      Brian C. Bowers.  That's B-R-I-A-N, middle

17    initial C, B-O-W-E-R-S.

18    Q.      Mr. Bowers, we met right before the

19    deposition.  My name is Andy Milz.  I represent

20    the Plaintiffs in this matter.  I understand

21    you're here to speak on behalf of Financial

22    Recoveries?

23    A.      Correct.

24    Q.      What's the full name of the company?

BRIAN BOWERS

```
 1   A.      Financial Recovery Services, Inc.
 2   Q.      Where are you located?
 3   A.      We're located in Edina, Minnesota.
 4   Q.      Have you ever been deposed before?
 5   A.      Yes.
 6   Q.      How many times?
 7   A.      Less than a half a dozen.
 8   Q.      Do you recall what the depositions were
 9   about?
10   A.      Collection cases.
11   Q.      Were they cases where Financial Recoveries
12   was a defendant?
13   A.      Correct.
14   Q.      And you were representing the company?
15   A.      Correct.
16   Q.      Did they involve alleged violations of the
17   Fair Debt Collection Practices Act?
18   A.      Correct.
19   Q.      Do you feel that you're familiar with the
20   processes that go on in a deposition?
21   A.      I'm somewhat familiar, yes.
22   Q.      You understand it's a question and answer
23   session.  I'll ask the questions, you provide the
24   answers.
```

BRIAN BOWERS

1   A.        Correct.

2   Q.        You wait until I finish asking my question

3   before you answer.

4   A.        Correct.

5   Q.        Let's try not to speak over each other

6   because it makes it hard for the court reporter to

7   keep up with us.

8             Is there any reason, sir, why you might be

9   unable to testify truthfully and to the best of

10  your knowledge today?

11  A.        No.

12  Q.        Do you understand your role here is to

13  speak on behalf of Financial Recoveries?

14  A.        Correct.

15  Q.        You understand that corporations aren't

16  living, breathing entities.  They can't speak for

17  themselves.  They have to select somebody to speak

18  for them?

19              MR. METCHO:  I'm going to object to

20         the form of the question.  I'm not even

21         sure that it is a question.

22              Mr. Bowers, you can respond if

23         you're able.

24              THE WITNESS:  Could you rephrase?

BRIAN BOWERS

7

```
 1             MR. MILZ:  I'll scratch that
 2        question.
 3   BY MR. MILZ:
 4   Q.        Do you understand that your testimony
 5   binds Financial Recoveries in this case?
 6   A.        I understand that I'm speaking on behalf
 7   of Financial Recoveries Services.
 8   Q.        Sir, are you familiar with requirements in
 9   the Fair Debt Collection Practices Act for debt
10   collectors to provide a notice of validation
11   rights?
12   A.        Yes.
13   Q.        What's your understanding of that
14   requirement?
15   A.        My understanding of that requirement is
16   that in our initial communication with the
17   consumer we must advise the consumer that they
18   have the right to dispute the debt and that we
19   must include that in our initial notification to
20   the consumer.
21   Q.        Are there any other rights that are
22   provided to the consumer in that notice that
23   you're aware of?
24   A.        We must provide to the consumer the name
```

BRIAN BOWERS

1    of the creditor, the amount of the debt, and we

2    must provide the validation notice to the

3    consumer.

4    Q.      What's your understanding of how that

5    notice is to be provided to the consumer?

6    A.      That notice is to be provided to the

7    consumer within five days of making contact with

8    that consumer.

9    Q.      Do you have any understanding of whether

10   that notice must be provided in a certain size in

11   the collection communication?

12   A.      Could you rephrase the question?

13   Q.      Sure.  Are there any guidelines that you

14   must follow in providing the notice related to the

15   form and placement of the notice in your

16   collection letters?

17   A.      To my knowledge there is nothing that

18   states specifically where that notification needs

19   to be placed nor the size font that needs to be

20   utilized.

21   Q.      Does Financial Recoveries employ any

22   guidelines within its own business related to

23   where the validation notice is placed or what size

24   print it's in?

9

BRIAN BOWERS

1   A.      When we design our letters, we ensure that

2   the validation notice is on the front page and

3   placed prior to any type of offers to the

4   consumers.

5   Q.      Anything else?

6   A.      And we ensure that the font is not smaller

7   than the font used in the remaining portion of the

8   letter.

9   Q.      When you say "the remaining portion of the

10  letter," what do you mean by that?

11  A.      The body of the letter.

12  Q.      Are there any written policies and

13  procedures which state that?

14  A.      That specifically address that?  I don't

15  believe so.

16  Q.      Any internal memoranda that states that?

17  A.      I don't believe so.

18  Q.      Are there any internal emails within

19  Financial Recoveries that state that policy you

20  just stated?

21  A.      I don't believe so.

22  Q.      Is this recorded anywhere in any written

23  documentation?

24  A.      I don't believe so.

BRIAN BOWERS

1  Q.      So you stated that, and correct me if I'm

2  wrong, it's Financial Recoveries' policy when

3  including the validation notice to ensure that the

4  validation notice is on the front of the letter,

5  that it's placed prior to any offers to consumers,

6  and that the font is not smaller than the rest of

7  the remaining portion of the letter.

8         Are there any other guidelines you follow

9  regarding the inclusion of the validation notice

10 in your initial communication?

11 A.      We have each of our notices reviewed for

12 compliance to federal and state laws by an outside

13 legal team to ensure that the proper validation

14 language is utilized and placed in a manner

15 consistent with federal laws.

16 Q.      Do you run each of your collection letters

17 containing this notice by this outside legal team?

18 A.      Could you rephrase that question, please?

19 Q.      Yes.  Do you run each of your form

20 collection letters that include this validation

21 notice by this outside legal team?

22 A.      All of our notices prior to use are

23 reviewed and approved by this outside legal team.

24         (Whereupon, letter was marked

BRIAN BOWERS

1           Exhibit Number FRS-1 for identification.)

2    BY MR. MILZ:

3    Q.       I'm going to hand you what's marked

4    FRS-1.  Sir, do you understand this January 15,

5    2015 collection communication as the letter that's

6    subject to Miss Jewsevskyj's Complaint and the

7    letter that's at issue in this case?

8    A.       Yes.  This appears to be a copy of that

9    letter.

10   Q.       I want to hand you -- I'll hand it to your

11   counsel first -- this is the original of the

12   letter.  I'll represent to you that's the original

13   provided to me by my client.

14              MR. METCHO:  Would you like Mr.

15           Bowers to testify as to the actual letter

16           or the copy that you handed him?

17              MR. MILZ:  He can look at that.  I

18           just want the record to reflect that we

19           have the original here.

20   BY MR. MILZ:

21   Q.       Mr. Bowers, if you want to compare the

22   two, that's fine.  I want to ask you, you see the

23   facsimile there as substantially similar to the

24   original that I've handed you?

1    A.        Correct.

2    Q.        Now, would you consider this to be a form

3    letter?

4                    MR. METCHO:  Can you define the term

5            "form"?

6                    MR. MILZ:  Sure.

7    BY MR. MILZ:

8    Q.        Now, Financial Recoveries didn't just type

9    up this letter and send it to Miss Jewsevskyj

10   individually, rather it created a series of

11   substantially similar letters, populated

12   information related to that particular consumer,

13   and then have the letters mailed out.  Is that an

14   accurate reflection of how a letter like this is

15   sent?

16   A.        Yes.  That would be an accurate statement

17   to the extent that the content of the letter would

18   be similar other than the varying fields that are

19   relative to the consumer as to address and account

20   information.

21   Q.        As far as the placement of the validation

22   notice on a letter such as this, would that be the

23   same in the form or template used by Financial

24   Recoveries?

BRIAN BOWERS

```
1    A.       For this particular notice?

2    Q.       Correct.

3    A.       Yes.

4    Q.       Just to make it easier for our discussion

5    purposes here, is it your understanding that FRS

6    employs a form or template when they use a letter

7    such as this in a mailing to consumers?

8                MR. METCHO:  I'm going to object to

9            the form of the question.  It's a bit

10           confusing.  Could you try to rephrase it?

11               MR. MILZ:  I don't think it's

12           confusing.

13               MR. METCHO:  You can answer, Brian.

14               THE WITNESS:  Could you just restate

15           the question?  You don't have to rephrase

16           it, just restate it.

17   BY MR. MILZ:

18   Q.       When you send a letter like that out, is

19   it based on a template?

20   A.       Correct.

21   Q.       When you ask for the outside legal team to

22   review one of your collection letters, a letter

23   such as this, do you send them that template?

24   A.       Correct.
```

BRIAN BOWERS

1             MR. METCHO:  Off the record just for
2         one moment, please.
3             (Discussion held off the record.)
4    BY MR. MILZ:
5    Q.      Did Financial Recoveries send this
6    particular template to its outside legal team?
7    A.      Yes.
8    Q.      Who was the outside legal team?
9    A.      It would be John Rossman at Moss and
10   Barnett and anyone in his office that he, I guess,
11   would utilize.
12   Q.      Generally speaking, when you sent that
13   letter for review, that template, did you get a
14   response from someone at this outside legal team?
15   A.      Correct.
16   Q.      What type of response did you receive from
17   them?
18             MR. METCHO:  I'm going to object to
19         the question as being subject to the
20         attorney/client privilege.  To the extent
21         that the answer is general, you may
22         answer.
23             THE WITNESS:  Through the collection
24         notice review program we would receive a

BRIAN BOWERS

```
 1              summation of or a checklist of the items
 2              needed for purposes of compliance and an
 3              indication as to if this particular notice
 4              was deemed compliant or not.
 5    BY MR. MILZ:
 6    Q.      That summation or checklist for purposes
 7    of compliance, is that a document that you would
 8    receive after sending this notice for review?
 9    A.      Yes.
10    Q.      Does that document include any reference
11    to the size or placement of --
12              MR. METCHO:  I'm going to object to
13              the question.  I'm going to instruct my
14              client not to answer the question.  The
15              question is seeking information that's
16              provided to FRS from their legal counsel
17              and it's protected by the attorney/client
18              privilege.
19              MR. MILZ:  I just want to respond to
20              that objection saying at this point we
21              don't have an answer from Defendant.  We
22              don't know whether the bona fide error is
23              at issue in this case.  If indeed it is,
24              it's our position that any attorney/client
```

BRIAN BOWERS

1          privilege related to communications with
2          counsel related to the drafting of this
3          notice are not privileged as the privilege
4          has been waived.  And that goes for any
5          affirmative defense where Financial
6          Recoveries might be relying on the advice
7          of outside counsel in the creation of
8          this.
9              You're instructing your client not
10         to answer?
11             MR. METCHO:  Correct.
12 BY MR. MILZ:
13 Q.     Let me just ask one additional question
14 along those lines.  What were the results of the
15 summation or checklist for purposes of compliance
16 that you received from this outside legal team at
17 Moss and Barnett related to the template letter at
18 issue in this case?
19             MR. METCHO:  Again, I'm going to
20         object to the question as being subject to
21         the attorney/client privilege and direct
22         Mr. Bowers not to respond to the question.
23 BY MR. MILZ:
24 Q.     So, sir, earlier you testified that the

BRIAN BOWERS

1    notice has to go out in the initial communication.
2    Do you remember mentioning that?
3    A.      Correct.
4    Q.      Is that the initial communication sent to
5    Miss Jewsevskyj?
6    A.      It is.
7    Q.      Would that template letter be the same
8    type of initial communication letter sent to other
9    folks in Pennsylvania for the same creditor
10   related to a debt such as this?
11   A.      Not necessarily.
12   Q.      Was Miss Jewsevskyj the only person in
13   Pennsylvania who received that form of initial
14   communication letter sent by Financial Recoveries?
15   A.      No.
16   Q.      If someone received that particular
17   letter, that template letter, sent by Financial
18   Recoveries, would it be your understanding that
19   that was the initial communication sent to that
20   person?
21   A.      Yes.
22   Q.      You testified earlier that the validation
23   rights notice provides the consumer the right to
24   dispute.  Do you remember testifying to that?

BRIAN BOWERS

1    A.      Yes.

2    Q.      What happens when Financial Recoveries

3    receives a dispute from a consumer?

4    A.      The account's status is changed to

5    disputed and an inquiry is made to the client, and

6    all collection activity is suspended until we can

7    obtain the information necessary to validate the

8    debt.

9    Q.      So when you say all collection activity is

10   suspended until you obtain the information

11   necessary to validate the debt, does that mean

12   Financial Recoveries can't continue to send

13   collection letters?

14   A.      Correct.

15   Q.      They can't continue to make collection

16   calls?

17   A.      Correct.

18   Q.      They can't file suit against the consumer?

19   A.      Correct.

20   Q.      They can't communicate with the consumer

21   in any way until if and when they're able to

22   obtain information necessary to validate the debt?

23   A.      Correct.

24   Q.      What happens if Financial Recoveries can't

BRIAN BOWERS

1   obtain that information necessary to validate the
2   debt?
3   A.      The collection activity does not resume.
4   Q.      Would that most likely mean that Financial
5   Recoveries is not going to get paid on that
6   account?
7   A.      Correct.
8   Q.      In a case where the consumer disputes and
9   collection activity is suspended and Financial
10  Recoveries is unable to obtain information to
11  validate the debt, in that case would the account
12  be sent back to the creditor?
13  A.      The creditor is notified of all disputes,
14  and if we are unable to obtain proper validation
15  of the debt, the account ultimately is returned as
16  disputed.
17  Q.      It's returned as disputed to the creditor?
18  A.      Correct.
19  Q.      The creditor, just to be clear, that
20  Financial Recoveries is collecting that debt for?
21  A.      Correct.
22  Q.      Who is the creditor on Financial
23  Recoveries FRS-1?
24  A.      The current creditor is LVNV Funding, LLC.

BRIAN BOWERS

1    Q.      What's LVNV Funding, LLC?

2    A.      It's an organization that owns this debt.

3    Q.      Do you understand that LVNV Funding is

4    what would be referred to as a debt buyer?

5    A.      Correct.

6    Q.      In other words, they purchase charged off

7    consumer debts from other entities, earlier

8    creditors, and then attempt to collect them?

9    A.      Correct.

10   Q.      Is it your understanding that when a debt

11   buyer is collecting from a consumer, that that

12   consumer had no direct lending or borrowing

13   relationship with that debt buyer?

14            MR. METCHO:  I'm going to object to

15        the form of the question.  You can answer,

16        Brian, if you're able.

17            THE WITNESS:  I don't have

18        sufficient knowledge of what kind of

19        contact LVNV Funding has with any consumer

20        because that's outside of my control.  I

21        can only make a representation as to what

22        happens with a consumer as it relates to

23        Financial Recoveries Services.

24   BY MR. MILZ:

BRIAN BOWERS

1  Q.      Do you have any understanding of whether

2  LVNV directly lends money to consumers?

3  A.      I don't know to the extent that LVNV

4  Funding does any lending in their business

5  practices.

6  Q.      You only know them as a debt buyer?

7  A.      Our relationship with LVNV Funding is only

8  related to the debts that they have purchased.

9  What they do outside of that, I have no idea.

10  Q.      So when Financial Recoveries Services is

11  collecting a debt on behalf of LVNV, those debts

12  are always debts that LVNV has purchased as a debt

13  buyer?

14  A.      To my knowledge, yes.

15  Q.      In your experience at Financial Recoveries

16  Services is it common for a consumer to dispute a

17  debt claiming that they do not recognize the name

18  of the correct creditor, i.e., a debt buyer?

19  A.      That does happen.  However, that's why the

20  original creditor is also provided to the

21  consumer.

22  Q.      In your experience is it common for

23  consumers to dispute a debt to Financial

24  Recoveries where the creditor is listed as a debt

BRIAN BOWERS

1   buyer where the consumer is disputing that the

2   debt buyer actually owns this debt that was once

3   owned by the original creditor?

4   A.      That's not that common.  More typically

5   they just do not recognize the relationship of the

6   current creditor.  Once that's explained to them

7   they recall the account and know it as its

8   original creditor.

9                   (Discussion held off the record.)

10                  (Whereupon, Responses to Plaintiff's

11          First Set of Interrogatories was marked

12          Exhibit Number FRS-2 was marked for

13          identification.)

14  BY MR. MILZ:

15  Q.      I'm handing you what's marked FRS-2.  Sir,

16  do you recognize this document?

17  A.      Yes.

18  Q.      Actually if you turn to the last page, is

19  that your notarized signature on the last page?

20  A.      It is.

21  Q.      You'll agree with me these are Financial

22  Recoveries Services, Inc.'s Responses to

23  Plaintiff's First Set of Interrogatories?

24  A.      Yes.

BRIAN BOWERS

1    Q.      I want you to turn to number two, please.

2    A.      (Complies.)

3    Q.      If you look at your answer to number two,

4    it states that the January 15, 2015 letter was

5    sent to Plaintiff by FRS via FRS letter service

6    provider, CompuMail, Inc.  Can you explain to me

7    that process?

8    A.      Yes.  CompuMail is the printer that prints

9    and mails each of our template letters.

10   Q.      Does CompuMail have any input on the

11   spacing used in the letters?

12   A.      (No response.)

13   Q.      Let me start this again.  Does CompuMail

14   have any control over the placement of the text on

15   the template letters that they mail out for

16   Financial Recoveries?

17   A.      To the extent that the notices are

18   designed to fit in a manner that allows for

19   preparation and delivery through the U.S. Postal

20   Service CompuMail has some input into the design.

21   However, they have no input into changing the font

22   size nor the language.

23   Q.      Those aspects are chosen by Financial

24   Recoveries Services?

BRIAN BOWERS

1    A.       Correct.  And once the final format of the

2    template is completed it is reviewed and approved

3    by FRS.

4    Q.       You said size and language.  Does the same

5    go for any numbered paragraphs placed on the

6    questioned communication?

7    A.       I don't know what you mean.

8    Q.       For instance, looking at FRS-1 there are

9    numbered paragraphs in the communication.  That's

10   something that's chosen by FRS?

11   A.       Yes.

12   Q.       If there are sections in the letter that

13   are in bold, that's something that's chosen by

14   FRS?

15   A.       Correct.

16   Q.       If text was lower case or sentence text as

17   opposed to all caps text, that's something that

18   chosen by FRS?

19   A.       Correct.

20   Q.       If a letter is typed in eight point font

21   as opposed to a larger font, that's something

22   that's chosen by FRS?

23   A.       Correct.

24   Q.       If a lighter color of black type is used

BRIAN BOWERS

1    over a darker black type, is that something that's

2    chosen by FRS?

3    A.        Correct.

4    Q.        Moving on to Question 3 on the

5    Interrogatories, you answered that you, Brian

6    Bowers, drafted the subject letter in this case;

7    correct?

8    A.        Correct.

9    Q.        Did your drafting of this subject letter

10   include the placement of the validation rights

11   notice in the body of the letter?

12   A.        Yes.

13   Q.        Sir, did you review or rely on any

14   guidance, any policies or procedures, related to

15   the placement of the validation notice in that

16   letter when you drafted it?

17   A.        Could you rephrase the question, please?

18   Q.        Did you review or rely on any guidance or

19   policies or procedures in placing the validation

20   rights notice in that letter when you drafted it?

21   A.        I relied upon my knowledge in drafting

22   Financial Recoveries Services' collection

23   templates and the information that I have obtained

24   through the collection notice review process to

BRIAN BOWERS

1    ensure that the validation notice language was

2    included in the body of the notice and that it did

3    not or was not overshadowed.

4    Q.       Sir, have you ever heard that the

5    validation notice to be conveyed effectively to a

6    consumer must be, quote, sufficiently large to be

7    read, comma, and sufficiently prominent to be

8    noticed?

9              MR. METCHO:  I object to the

10             question as a conclusion of law.

11             Mr. Bowers, you could answer if

12             you're able.

13             THE WITNESS:  Okay.  Could you

14             repeat the question?

15   BY MR. MILZ:

16   Q.       Sure.  Have you ever heard that it's been

17   said by the Courts that for a validation notice to

18   be conveyed effectively to a consumer it must be,

19   quote, sufficiently large to be read and

20   sufficiently prominent to be noticed?

21   A.       I have heard that.  I don't know where I

22   heard or read that.  I know that it is part of

23   some of the collection notice review process that

24   we undergo.

BRIAN BOWERS

1          By looking at this letter I can see that

2     it's prominent and that it is in the first or

3     second paragraph of the letter.  And even though I

4     have somewhat poor eyesight I can still see that

5     the language is there and it is understandable and

6     is of the same font size as the remaining portion

7     of the letter.  So in no way, shape or form is it

8     something that is not noticeable.

9     Q.      So that quote that I just gave you, you

10    said it's part of the notice or review to you

11    understanding.  Is there any documentation that

12    you employ during that notice and review which

13    would have that language in there sufficiently

14    large to be read, sufficiently prominent to be

15    noticed?

16    A.      That would be a part of the communications

17    that I have with outside counsel.

18    Q.      Do you have any documentation relating to

19    those communications with outside counsel in

20    relation to this template?

21    A.      As I have previously mentioned, we receive

22    a collection notice review summary and approval

23    form for each letter that is submitted to the

24    collection notice review program, so we would have

BRIAN BOWERS

```
1    that.
2    Q.      What did that say in relation to this
3    letter?
4              MR. METCHO:  I'm going to object to
5              the question.  It's seeking information
6              that is protected by the attorney/client
7              privilege.  I'm going to direct Mr. Bowers
8              not to answer the question.
9    BY MR. MILZ:
10   Q.      What's your understanding of the meaning
11   of the word "prominent"?
12   A.      My understanding of the word prominent
13   would mean that it is not hidden.
14   Q.      Any other understanding of the word?
15   A.      I don't have a dictionary in front of me.
16   Q.      I've got a dictionary in front of me.  I
17   want you to look at the definition of the word --
18              MR. METCHO:  Is this really
19              necessary, Andy?
20              MR. MILZ:  It is.
21              MR. METCHO:  What's the basis for
22              this?
23              THE WITNESS:  I'll just look at it.
24              One of the lines says readily noticeable,
```

BRIAN BOWERS

```
 1          and one says widely and popularly known.
 2          It's right from the dictionary.  I guess
 3          that would correspond to where we place
 4          the notice in the first or second
 5          paragraph and it looks very prominent to
 6          me.  It looks like it's in a widely and
 7          popularly known place.  I've seen many
 8          validation notices and it seems like it
 9          would be in the right spot.  It looks like
10          it's standing out.
11  BY MR. MILZ:
12  Q.     Would the validation rights notice be
13  widely known to consumers receiving that letter?
14  A.     I guess that depends on how many of these
15  types of notices they happen to receive.
16  Q.     And you, sir, have seen I guess hundreds
17  or thousands of them over the years; correct?
18  A.     I don't know how many exactly I've seen.
19  Q.     And you, sir, you drafted that letter;
20  correct?
21  A.     Correct.
22  Q.     You know where the validation notice is in
23  that letter; correct?
24  A.     Yes.  It's in the first or second
```

BRIAN BOWERS

1    paragraph.

2    Q.       The first or second?  Where is it?

3    A.       It's right there.

4    Q.       You're pointing to the second paragraph?

5    A.       I am.

6    Q.       This definition of prominent from Merriam

7    Webster's Collegiate Dictionary 10th Edition 1993

8    lists prominent as to jut forward.

9                 MR. METCHO:  I'm going to object.

10                Is there a reason that we're reading a

11                dictionary at this point in the

12                deposition?

13                MR. MILZ:  Your objection is noted.

14   BY MR. MILZ:

15   Q.       Are you stating that it's your position

16   that the validation notice in this second

17   paragraph juts forward from the other copy in the

18   body of the collection letter?

19   A.       Is there more to the definition in the

20   dictionary as it relates to that particular word?

21   Q.       Sure.

22   A.       And can we review it in its entirety as a

23   definition rather than that one component of it?

24   Q.       Absolutely.  To jut forward, standing out

BRIAN BOWERS

1    or projecting beyond a surface or line, readily

2    noticeable, widely and popularly known.

3           Is this readily noticeable, this second

4    paragraph, in comparison to the rest of the copy

5    in the body of that collection letter?

6    A.      As I read it, yes, it is very readily

7    noticeable.

8    Q.      So let's go through these

9    characterizations of the word prominent here.

10   Does it jut forward -- and we'll go through each

11   of them -- does it jut forward in relation to the

12   remainder of the body of that letter?

13              MR. METCHO:  I'm going to object to

14          this line of questioning also as

15          constituting conclusions of law.

16              Mr. Bowers, you can answer if you

17          are able.

18              THE WITNESS:  In my opinion it's

19          very noticeable.

20   BY MR. MILZ:

21   Q.      Does it jut forward from the rest of the

22   copy or as you say it was in the same size and

23   type as the rest of the body?

24   A.      In my opinion that language is not

BRIAN BOWERS

1   overshadowed by the remaining portion of letter.

2   Q.      I understand that, Mr. Bowers.  You

3   drafted the letter and you're representing the

4   Defendant in this case. I'm asking a simple

5   question.

6           Does that second paragraph jut forward in

7   relation to the rest of the body of the language

8   in the letter?

9   A.      You know, I'm not going to argue or debate

10  the meaning of the word "prominent" with you.  It

11  stands by itself.  And so I can only state to you

12  that it is my position and opinion that the

13  validation notice is not overshadowed by the

14  remaining portion of the letter and that it is

15  displayed in accordance with the law.

16  Q.      Would you agree that if the validation

17  notice was in bold, it would be more prominent

18  than the rest of the body of that letter?

19  A.      To my knowledge there's nothing that

20  indicates or is required that this language be in

21  bold.

22  Q.      That's a yes or no question that I asked

23  you.  You could answer it yes or no.  I don't

24  really care what your answer is.

BRIAN BOWERS

1          But looking at that second paragraph if

2     that was in bold or if that was underlined, would

3     it be more prominent than the rest of the copy of

4     the letter?

5     A.     If Congress intended for it to be in bold,

6     they would have required it in the legislation.

7     Q.     So you're not going to answer my question?

8     A.     I answered it to the best of my ability.

9     Q.     Is that second paragraph standing out or

10    projecting in any way in relation to the rest of

11    the body in the copy of that letter?

12    A.     It is placed in the first or second

13    paragraph of any validation letter to any consumer

14    at FRS, Financial Recoveries Services.

15    Q.     This is the second time you said it's

16    placed in the first or second paragraph.  In this

17    particular letter is it placed in the first

18    paragraph, the validation notice?

19    A.     No, it is not in the first paragraph.  It

20    is in the second paragraph in this particular

21    letter.

22    Q.     So in this particular letter does this

23    second paragraph, that's the validation notice --

24    I'll ask it again.  It's a yes or no question.

BRIAN BOWERS

1    Does it the stand out or project in relation to

2    the remainder of the body of this collection

3    letter?

4    A.       I think that it stands out as it is in the

5    top portion of the letter.

6    Q.       So again you're not going to answer yes or

7    no?

8    A.       I answered the question to the best of my

9    ability.

10   Q.       So you think that that's readily

11   noticeable?

12   A.       Yes.

13   Q.       Would it be more noticeable if, for

14   instance, it was indented or there was a heading

15   stating important notice?

16   A.       I guess that would be a matter of opinion.

17   Q.       It's your opinion that it wouldn't be?

18   A.       In my opinion I tend to read a notice in

19   its entirety.

20   Q.       I'll move to Interrogatory Number 5.

21   You'll agree we ask for any and all documents in

22   your possession including electronic documents

23   such as emails which address or bare upon the

24   size, font, readability, placement and/or format

BRIAN BOWERS

1    of the validations rights notice utilized in your

2    collection letters, and attach documents which

3    relate to your answer.

4            You object and then you say Defendant is

5    not in possession of any documents indicating that

6    the font size used in the letter at issue was not

7    appropriate.

8            I just want to clarify that we were not

9    asking for documents that mention that the font

10   size was not appropriate.  We're looking for any

11   and all documents which address or bear upon the

12   size, font, readability, placement or format.

13           With that clarification, which I think is

14   apparent from the Interrogatory, are there any

15   documents that exist responsive to this discovery

16   request?

17   A.      I believe that the answer states that the

18   Defendant is not in possession of any documents

19   indicating that the font size used in the letter

20   at issue was not appropriate.

21   Q.      Do you have any documents reflecting that

22   the font size used in the letter was appropriate?

23   A.      Such as?  Can you give me an example of

24   anything?

BRIAN BOWERS

```
1    Q.       They would be your documents.  I don't
2    know.   Emails, memos, policies and procedures.
3    A.       Here again --
4    Q.       We're not just asking for font size, but
5    readability, placement and format of the
6    validation notice.  Your answer specifically
7    mentions font size, but there's more to our
8    question.
9    A.       Here again, that goes back to the
10   collection notice review program and the
11   communications back and forth from our outside
12   counsel that reviews these notices as we
13   previously discussed.
14   Q.       So are you stating that any documents
15   responsive to this would be subject to an
16   attorney/client privilege?  Because if so, that
17   objection is not made.  We've not been provided
18   with any privilege log.  This information is
19   discoverable.
20            MR. METCHO:  We can follow up with
21        both Mr. Bowers and counsel regarding a
22        particular document.  If that is the case
23        and we find that, we can amend our
24        response to Interrogatory Number 5.
```

BRIAN BOWERS

1              THE WITNESS:  There would be one
2          document that we do review, and that is
3          the ACA's Guide to Federal and State
4          Collection Laws.
5    BY MR. MILZ:
6    Q.     That's a document you keep in your
7    possession?
8    A.     We subscribe to a subscription from the
9    ACA and it's a three-ring binder.  It's readily
10   available to anybody.
11             MR. MILZ:  Well, I'll ask that any
12         information bearing on the size, font,
13         readability, placement and/or format of
14         the validation rights notice reflected in
15         that Guide is produced.  We don't need the
16         whole thing.
17             MR. METCHO:  I'll discuss it with my
18         client.  When he gets back to his place of
19         business he can --
20             MR. MILZ:  I certainly don't want
21         the whole three-right binder.
22             MR. METCHO:  -- look at documents
23         and whatever is responsive to the request
24         will be produced.  The documentation is

BRIAN BOWERS

1              readily available in the public domain as

2              Mr. Bowers stated.

3   BY MR. MILZ:

4   Q.      Mr. Bowers, apart from yourself does

5   anyone else at Financial Recoveries Services have

6   any involvement in the drafting or approval of

7   template collection letters such as FRS-1?

8   A.      No.

9              MR. MILZ:  I'll just note for the

10             record, Ron, that Number 8 is apparently

11             subject to your objection, and our

12             conversation related to Number 5 as well.

13  BY MR. MILZ:

14  Q.      Looking at Number 10, sir, are you aware

15  of any affirmative defenses that Financial

16  Recoveries is raising in this case?

17             MR. METCHO:  Not as an objection,

18             but for the record, we have yet to file an

19             Answer in this matter.  We will be filing

20             an Answer which will contain several

21             affirmative defenses.  It needs to be

22             approved by the client first.  After that

23             Answer is filed we can update our response

24             to Interrogatory Number 10.

BRIAN BOWERS

```
 1              (Whereupon, Responses to Plaintiff's
 2         First Request for Production of Documents
 3         was marked Exhibit Number FRS-3 for
 4         identification.)
 5   BY MR. MILZ:
 6   Q.     I want to hand you what I'm going to mark
 7   FRS-3.
 8              (Discussion held off the record.)
 9   BY MR. MILZ:
10   Q.     Looking at Number 1, are you aware, sir,
11   of any documents that Financial Recoveries
12   Services will be relying on in defending against
13   Plaintiff's claims or supporting any of its
14   affirmative defenses?
15   A.     Could you rephrase that question again,
16   please?
17   Q.     Are you aware of any documents that
18   support or go against any claim raised by Miss
19   Jewsevskyj in this case that are in Financial
20   Recoveries' possession?
21   A.     Not to my knowledge.
22              (Discussion held off the record.)
23   BY MR. MILZ:
24   Q.     Sir, I want to call your attention back to
```

BRIAN BOWERS

1    FRS-1, the letter in this case.  I want you to

2    look at the margins of that page where the body

3    is.  Is that something that's selected by FRS or

4    is that something in control of the printer?

5    A.       We ask the printer to format the language

6    or the format of the letter in such a way that it

7    fits so that they can print everything that needs

8    to be on the letter and properly mail the letter.

9    Q.       You say everything that needs to be on

10   this letter.  With this initial communication the

11   only information that needs to be on the initial

12   communication would be the information that's

13   required by the debt collection laws; correct?

14            MR. METCHO:  I'm going to object to

15        the form of the question.  Try to clarify

16        that question, Andy, please.

17            MR. MILZ:  I think it's clear.

18            MR. METCHO:  If you can answer it,

19        Mr. Bowers, please do.

20            THE WITNESS:  You need to provide

21        all of the disclosures that are required

22        by debt collection laws, that is correct.

23        And you would need to provide the

24        information as it's related to the

BRIAN BOWERS

1          creditor and the balance itemization.  You
2          need to also make sure that the consumer's
3          information is there related to their
4          address and return address, and you need
5          to provide them with information as to how
6          to contact you or resolve the matter.
7    BY MR. MILZ:
8    Q.      I want you to look at the third paragraph
9    down, We are authorized to offer you the
10   opportunities listed below; do you see that?
11   A.      I do see that.
12   Q.      Then there are four numbered paragraphs
13   that are indented with an open parenthesis there;
14   do you see that?
15   A.      I do see that.
16   Q.      Then it's what looks like payment options;
17   correct?
18   A.      Yes, that's correct.
19   Q.      That information regarding these payment
20   options, that is not something that is required by
21   law to be included in initial communication to a
22   consumer, is it?
23   A.      It is not specifically required by the
24   law, but it is something that many consumers take

BRIAN BOWERS

1    advantage of and many consumers utilize in order

2    to resolve their accounts.

3    Q.      So these are different options for them to

4    pay Financial Recoveries?

5    A.      These are different options for them to

6    resolve their account.

7    Q.      But again, there's no law that mandates

8    that that type of information is included on the

9    initial communication to a consumer; correct?

10   A.      That is correct.

11   Q.      Financial Recoveries chooses to include

12   that information on this letter; correct?

13   A.      For the benefit of the consumer we choose

14   to provide them with options that they can choose

15   at their discretion.

16   Q.      So this is for the consumer's benefit, not

17   for Financial Recoveries' interest in getting paid

18   on this account?

19              MR. METCHO:  I'm going to object to

20        the form.  Is that a question or a

21        statement?

22   BY MR. MILZ:

23   Q.      Was that your answer, sir?

24   A.      My answer remains unchanged.

BRIAN BOWERS

1   Q.     Below Number 4 there, there's a paragraph

2 that says Please mark your choice with an X; do

3 you see that?

4   A.     I do see that.

5   Q.     Now, that paragraph continuing all the way

6 down to the word "settlement" all in caps, that

7 paragraph is not mandated by law to be in the

8 initial communication to a consumer, is it?

9   A.     It is not mandated specifically for the

10 requirements of fulfilling the validation notice.

11   Q.     Below that paragraph there's a statement,

12 Feel free to call us, and then your website there

13 is in bold; do you see that?

14   A.     I can't tell specifically from this copy

15 if that's in bold or not.

16   Q.     Let me give you the original.

17         MR. METCHO:  Andy, if he's going to

18         testify as to the original letter, I think

19         we should have it marked as an exhibit.

20         MR. MILZ:  Okay, that's fine.  I'm

21         going to keep it in my possession if

22         that's all right.

23         MR. METCHO:  That's fine.  I just

24         want the record to reflect that Mr. Bowers

BRIAN BOWERS

1            is testifying as to that particular

2            letter.

3                    THE WITNESS:  It doesn't appear to

4            be bold to me.

5                    (Whereupon, original letter was

6            marked Exhibit Number FRS-4 for

7            identification.)

8    BY MR. MILZ:

9    Q.      It's underlined though; correct?

10   A.      Yes, it is underlined.

11                   MR. METCHO:  Let the record reflect

12           that Mr. Bowers is reading from what has

13           been marked as FRS-4, which is the

14           original.  It's not a copy.  It's the

15           original letter that was mailed to the

16           Plaintiff in this matter.

17   BY MR. MILZ:

18   Q.      Below that section there's a signature

19   line and then there's a statement, This is an

20   attempt to collect a debt.  Any information

21   obtained will be used for that purpose.  This

22   communication is from a debt collector.  Do you

23   see that?

24   A.      I do see that.

BRIAN BOWERS

1    Q.      And that information is required by law to

2    be in your letter; is it not?

3    A.      Correct.

4    Q.      Financial Recoveries chose to have that

5    centered in the middle of this letter with white

6    space around it; do you agree?

7                  MR. METCHO:  I'm going to object.

8             It's not a question.  It's a statement.

9             You can ask Mr. Bowers questions, but he's

10            not just going to agree and disagree to

11            your testimony.

12   BY MR. MILZ:

13   Q.      Who chose to put that statement in a form

14   where it's centered amid white space in that

15   section of the letter?

16   A.      It's not material.

17   Q.      I'm sorry?

18   A.      It's not material.

19   Q.      What do you mean by that?

20   A.      It's not material how it's centered in the

21   page.  The office hours are centered in the page,

22   too.  What difference does it make?

23   Q.      Well, I think it's up to the Court to

24   determine what's material and relevant.

BRIAN BOWERS

1    A.        Okay.   Well, I'm making a statement.   What

2    difference does it make?   It doesn't make any

3    difference and it's immaterial.

4    Q.        So I'll ask my question again.   Who chose

5    for that statement to be centered in the portion

6    of the page amidst white space like that?

7    A.        I don't recall.   But since I drafted the

8    letter it was me.   And my opinion is it's

9    immaterial and makes no difference.

10   Q.        Well, you could have chosen to do that

11   with the validation notice, couldn't you?

12   A.        I could have chosen to do that with

13   anything in this page.

14   Q.        But Financial Recoveries chose not to

15   center the validation notice with ample white

16   space around it, didn't it?

17   A.        FRS chose to put the validation notice in

18   the notice as described by the law.

19   Q.        Is it your position that you could not

20   have placed it in any more of a prominent or

21   conspicuous manner?

22   A.        I guess that's subject to opinion.

23   Q.        Instead Financial Recoveries did what they

24   consider to be the bare minimum here?

BRIAN BOWERS

1            MR. METCHO:  Is that a question?

2            Mr. Bowers, do not answer the

3       question.

4            You can ask a question, Andy, but

5       enough of the statements.

6   BY MR. MILZ:

7   Q.      Sir, looking in that section I was just

8   talking about, the section that's centered amid

9   the white space, about three-quarters of the way

10  down the letter, you'll agree there's a statement

11  in bold there that says See reverse side for

12  important information?

13  A.      Yes.

14  Q.      That's in bold?

15  A.      Yes.

16  Q.      And you chose to put that in bold?

17  A.      Yes.

18  Q.      Turning the letter over, what is reflected

19  on the back side of this letter?

20  A.      Generally speaking, these are additional

21  information that's required by various states and

22  that information may be provided on the back of a

23  letter.  In the event that you do put it on the

24  back of the letter, there must be something on the

BRIAN BOWERS

1   front of the letter that directs their attention

2   to see the reverse side for that information.

3   Q.      Would you agree that none of this

4   information as relates to these other state laws,

5   California, Colorado, Massachusetts, Minnesota,

6   New York, North Carolina, Tennessee, Wisconsin, is

7   important at all to somebody with an address in

8   Pennsylvania, is it?

9   A.      I would state that as it relates to

10  compliance to Pennsylvania law it is not

11  required.  I would state that there's information

12  on the back that directs any consumer to the FTC

13  or the CFPB as it relates to any violations

14  related to the Fair Debt Collections Practices Act

15  and provides them information that if they have

16  grievances as such that they have a resource at

17  their avail.  So if you don't believe that that's

18  important to a Pennsylvania consumer, well, I

19  guess that's your opinion.

20  Q.      Well, that wasn't my question.  My

21  question was related to those states, those

22  specific statements related to the states.

23  They're not relevant at all to a Pennsylvania

24  consumer, are they?

BRIAN BOWERS

1   A.        Your question was if any of the

2   information on the back was relevant to a

3   Pennsylvania consumer or not.

4   Q.        My question was specific to those states

5   and I named the states.

6   A.        Okay.

7   Q.        So if that information related to those

8   states wasn't on the back there, there would be a

9   lot more room in this letter to make that notice

10  more conspicuous, wouldn't there be?

11  A.        One less line.

12  Q.        I'm sorry?

13  A.        One less line.

14  Q.        What do you mean by that?

15  A.        You said if that information wasn't in

16  there, there would be one less line.  See reverse

17  side for important information.  That's one less

18  line.

19  Q.        There's all this space on the reverse as

20  well?

21  A.        To my knowledge validation language must

22  be placed on the front of the letter and not the

23  back.

24  Q.        There's information on the front of this

BRIAN BOWERS

1    letter taking up space that is not required to be

2    there, is there not?

3    A.      Can you ask me a question as it relates to

4    a specific item and if it's required there or

5    not?

6    Q.      Well, I've already asked and you've

7    already stated that paragraph three starting with

8    "We are authorized" going all the way down to

9    "from this settlement," those paragraphs aren't

10   required by law to be in your initial

11   communication.  Do you recall giving that

12   testimony?

13   A.      I do.

14   Q.      By choosing to include this additional

15   information would you agree with me that it

16   resulted in less space for the provision of the

17   required validation notice?

18   A.      There is nothing in the law that states

19   that you cannot put information other than the

20   validation language in the initial notice.

21   Q.      So Financial Recoveries included this

22   additional information, did it not, in the attempt

23   to get paid as well as providing the notice that's

24   required under the law?

BRIAN BOWERS

1    A.      FRS provided this additional information

2    to give the consumer options.

3    Q.      Options related to paying Financial

4    Recoveries?

5    A.      Options related to resolving their

6    account.

7    Q.      Why did you choose to use all block

8    capitalized text for this letter?

9    A.      For many years we utilized block case,

10   capital case, and it was just something that's

11   always been done.

12   Q.      Do you know why?

13   A.      I believe that it was a carryover from the

14   fact that our initial notices were internally

15   created, and our collection platform back then

16   only utilized capital font, capital case

17   lettering, so that's why that was the way it was.

18   We just never changed and it had never been a

19   problem.

20   Q.      Well, that wouldn't require, would it, the

21   remainder of the text in that body to be all caps

22   as well, would it?

23   A.      Excuse me?

24   Q.      That carryover that you mentioned from how

BRIAN BOWERS

```
 1    your internal --

 2    A.        Correct.  And you asked me how come our

 3    sentence case or capital case came to be and I

 4    answered the question to the best of my abilities.

 5    Q.        I just want to make sure we've got this

 6    clear for the record.

 7              The fact that you have this carryover that

 8    you suspect is the reason why the notice was in

 9    all caps does not require the entire body of the

10    text in this collection letter to be in all caps,

11    does it?

12    A.        No.

13    Q.        Would you agree that if the remainder of

14    the body of this text was in sentence case and

15    just the notice was in all caps, that the notice

16    would be more prominent in this letter?

17    A.        I guess that's subject to opinion.

18    Q.        I'm asking would you agree.  I'm asking

19    for your opinion.

20    A.        Potentially.

21    Q.        Would you agree that the use of the all

22    caps for the remainder of the body of the letter

23    causes the validation notice to blend in with the

24    remainder of the body of the letter?
```

BRIAN BOWERS

1    A.        It is of the same size font and format as

2    the rest of the letter and as such follows the

3    guidance provided by the law that you cannot

4    overshadow the disclosure itself.

5    Q.        Turning over to the reverse, looking at

6    the text on this page there's some caps and

7    there's some sentence case, would you agree?

8    A.        Yes.

9    Q.        If Financial Recoveries wanted to use

10   sentence case for the body of its collection

11   letter on the front side, it could have?

12              MR. METCHO:  Objection.  Is it a

13         statement or is it a question?

14              MR. MILZ:  I asked would he agree.

15              MR. METCHO:  You didn't, but thank

16         you.

17              THE WITNESS:  Yes, it can.

18   BY MR. MILZ:

19   Q.        You'll notice that some of these

20   statements related to the various state laws in

21   California, Colorado, Massachusetts, Minnesota,

22   New York City, North Carolina, Tennessee,

23   Wisconsin, each of those statements have before

24   them a centered headline before the paragraphs

BRIAN BOWERS

1    related to those states; would you agree with

2    that?

3    A.        Yes, that's correct.

4    Q.        Had Financial Recoveries wanted to, would

5    you agree that it could have included on the front

6    side a statement related to the validation notice

7    as a title in the middle above the validation

8    notice?

9    A.        You could add whatever you would want to

10   the letter, albeit it's not specifically required

11   by federal law that you do so.

12   Q.        That wasn't my question.  My question was

13   if it wanted to, it could have included that

14   there; correct?

15   A.        I answered the question.

16              (Whereupon, letter was marked

17         Exhibit Number FRS-5 for identification.)

18   BY MR. MILZ:

19   Q.        I hand you what's marked FRS-5.

20              MR. METCHO:  I think we've been down

21         this road before.  I'm going to object to

22         it.

23   BY MR. MILZ:

24   Q.        Sir, do you recognize this as a letter

sent by your company, Financial Recovery Services, Inc.?

A. Yes. But it seems to be --

Q. It's not the best copy.

A. -- altered or missing or smudged.

Q. Now, you'll agree that this letter sent to Miss Jewsevskyj was in sentence case?

A. Yes.

Q. Looking in between that one and FRS-1 would you agree that when one reads the sentence case, it's easier to read than the all caps case of the FRS-1 letter?

A. You're stating -- I would disagree.

Q. You would disagree? It's your position that the all caps letter is easier to read than the sentence case letter?

A. I guess that's subject to opinion.

Q. I'm asking for your opinion.

A. That's why I'm saying. I'm saying both of them -- I can read both of them the same.

(Whereupon, letter was marked Exhibit Number FRS-6 for identification.)

BY MR. MILZ:

Q. I want to hand you what's marked FRS-6.

BRIAN BOWERS

```
 1              MR. METCHO:  I'm going to object to
 2         the use of this letter.  It is an FRS
 3         letter; however, it does not pertain to
 4         the Plaintiff in this matter and the use
 5         of this letter in regard to either
 6         Plaintiff's claims or the defense of this
 7         matter are completely irrelevant.
 8         However, I will allow Mr. Milz to ask
 9         questions, but note my objection on the
10         record that this letter has nothing to do
11         with the matter at hand.
12              MR. MILZ:  I just want to respond
13         that this letter was produced by the
14         Defendant in this case in support of its
15         motion to dismiss the Complaint and the
16         sole document referenced in its discovery
17         response as being responsive to our
18         request.  So I think that objection is
19         very ill founded.
20              MR. METCHO:  Depending on your line
21         of questioning which is why I'm allowing
22         the questioning.  You can continue.
23    BY MR. MILZ:
24    Q.        Sir, we've established through your
```

Timko Court Reporting - (215) 751-9003

BRIAN BOWERS

1    Counsel that this is a Financial Recovery

2    Services, Inc. letter.  Sir, is this also an

3    initial communication?

4    A.       Yes, it is.

5    Q.       Indeed, does it say right in the middle of

6    the page above the body of the text in stars and

7    apparently in bold and caps "Initial

8    Notification"?

9    A.       Yes, it does.

10   Q.       The text of that headline, Initial

11   Notification, it is larger than the body that

12   follows; correct?

13   A.       Yes, in this case it is.

14   Q.       Would you agree it calls the reader's

15   attention to the middle of page?

16                MR. METCHO:  Objection.  You can

17           answer.

18                THE WITNESS:  It may or may not.

19   BY MR. MILZ:

20   Q.       Looking at the language of the body

21   underneath that headline Insurance Notification,

22   starting with "The accounts" going all the way

23   down to "Commerce," would you agree that the

24   information contained in this initial

BRIAN BOWERS

1   communication is only information relating to

2   those disclosures that are mandated by law to be

3   given to the consumer?

4   A.      It has the validation language as the

5   other exhibits that you provided in Exhibit 1 and

6   Exhibit 4.  I believe that language is all the

7   same.  It looks like it's all the same font size.

8   It looks like in this particular notice it is the

9   third paragraph rather than the second paragraph,

10  and it appears that our notice in FRS-1 and FRS-4

11  provides further information as it relates to date

12  of last payment, balance itemization and so forth.

13  Q.      So I just want to ask my question again

14  because that was not exactly responsive to my

15  question.

16          My question was would you agree with me

17  that the information provided under that heading

18  Initial Notification from the line The accounts

19  all the way down to Commerce is solely information

20  that is mandated by law to be provided to the

21  consumer in the initial communication?

22  A.      Starting with?

23  Q.      Everything under that initial notification

24  down to above Sincerely.

BRIAN BOWERS

1    A.       Yes.

2    Q.       You will agree with me that there's no

3    other extraneous information in that section;

4    correct?

5    A.       There is no other information in that

6    section.

7    Q.       Would you agree with me that those legal

8    notices are set out on their own without any other

9    information in that area of that letter?

10   A.       Correct.

11   Q.       And that's quite different than Exhibit 1,

12   is it not?

13   A.       It's different, but it still contains the

14   same information.

15   Q.       Would you agree then, sir, that these

16   statutory notices stand out better or more

17   prominently when they're on their own as compared

18   to when they're placed in a body of text

19   containing other extraneous information?

20   A.       No more, no less.

21   Q.       Would you agree that the validation notice

22   in this letter is more prominent because it

23   follows a headline in larger bold capital letters

24   surrounded by the stars stating initial

BRIAN BOWERS

1    notification?

2    A.      No.

3    Q.      Would you agree that the validation notice

4    is more prominent in this letter because the

5    margins of the letter are much wider than in

6    FRS-1?

7    A.      I haven't really noticed that.

8    Q.      So your answer is?

9    A.      No.

10   Q.      When FRS sends the initial communication

11   to Miss Jewsevskyj, if it wanted to it could have

12   sent her an initial notification that included

13   just those statutory notices and nothing else,

14   couldn't they have?

15   A.      Miss Jewsevskyj was provided all of the

16   required notifications that FRS needed to send.

17   Q.      If it wanted to, it could have sent those

18   notifications separate and apart from the request

19   for payment and the check boxes and numbered

20   paragraphs, couldn't it have?

21   A.      It could have.

22   Q.      But it chose not to; correct?

23   A.      Correct.  It chose to follow -- it

24   followed the guidance of federal law.

BRIAN BOWERS

1   Q.      Sir, over the years in your history of

2   drafting these collection letters, particularly

3   the initial communication to consumers for

4   Financial Recovery Services, have you experimented

5   with placing the notice in various different spots

6   in the collection letters?  Over the years, say

7   over the last five years?

8   A.      It typically could be placed in the first

9   or second paragraph of the letter.  And it's

10  placed there for the reason that the validation

11  language appears on the first letter is that it is

12  required by law.

13  Q.      I'll go back to my question.  I think

14  maybe it wasn't clear.

15          Over the years you've drafted several

16  different versions of an initial communication to

17  be sent to consumers by FRS; correct?

18  A.      Correct.

19  Q.      Would you agree that in that period you

20  have placed the validation notice required by

21  1692(g) in various different spots in those

22  initial communications?

23  A.      Not necessarily.

24  Q.      We can look through some of them from over

BRIAN BOWERS

1    the years.

2                    (Discussion held off the record.)

3    BY MR. MILZ:

4    Q.        Sir, over time -- I'll limit my request to

5    the last five years -- in your history of drafting

6    the initial communication for FRS there have been

7    times when you included the initial communication

8    in the very first paragraph of the collection

9    letter; is that correct?

10   A.        I don't have enough information to answer

11   that.

12                   MR. MILZ:  If the witness is going

13                   to say it, then I think it's important for

14                   me to show him the document.

15                   MR. METCHO:  Ask it in another

16                   manner.  Ask it in another way.

17   BY MR. MILZ:

18   Q.        Have you put the validation notice in the

19   very first paragraph of collection letters in the

20   past?

21   A.        We may have.

22   Q.        If I showed you a collection letter from

23   FRS, that's an initial communication with the

24   validation in the very first paragraph, would you

BRIAN BOWERS

1   agree that FRS --
2   A.      As I previously testified, the validation
3   language is in the first or second paragraph
4   typically of any validation notice or initial
5   notice that we send to a consumer.  I previously
6   testified to that aspect.
7   Q.      In your history of drafting the initial
8   communications to consumers for FRS have you
9   placed the validation notice in the last paragraph
10  of the body of a collection communication?
11  A.      Not in recent history that I can
12  recollect.
13  Q.      Did you in 2012?
14  A.      I don't know.
15          MR. MILZ:  I tried to go about it
16          the way to get around any objection you
17          have.  I'm showing the document to the
18          witness.
19          (Whereupon, letter was marked
20          Exhibit Number FRS-7 for identification.)
21  BY MR. MILZ:
22  Q.      Sir, I'm handing you what's marked FRS-7.
23          MR. METCHO:  I'm putting an
24          objection on the record noting that this

BRIAN BOWERS

```
 1              is the first time that counsel has seen
 2              this letter.  I cannot attest to the truth
 3              or voracity of this letter.  Due to that
 4              fact I am directing Mr. Bowers to not
 5              answer any questions pertaining to this
 6              letter.  I'm putting an objection on the
 7              record to that effect.
 8    BY MR. MILZ:
 9    Q.       Mr. Bowers, would you agree with me that
10    in this collection letter the validation notice
11    required by 1692(g) is in the last paragraph of
12    the body of the collection letter?
13    A.       I note that this notice is from --
14              MR. METCHO:  Again, I'm objecting
15              and directing my client not to answer any
16              questions pertaining to this particular
17              letter that has been marked as Exhibit 7.
18    BY MR. MILZ:
19    Q.       In your time at FRS of drafting the
20    initial communications have you drafted
21    communications where the validation notice was
22    placed separate and apart from the body of the
23    text in a collection letter?
24    A.       Separate from the body of the text?
```

BRIAN BOWERS

1    Q.      Correct.

2    A.      No.

3    Q.      How long have you been drafting collection

4    letters for FRS?

5    A.      Since 1996.

6    Q.      Have you been CEO and president that

7    entire time?

8    A.      Yes.

9    Q.      Would you agree, sir, that regardless of

10   whether the language of your validation notice is

11   correct and accurate or not, if the notice is

12   placed in an inconspicuous or not prominent manner

13   it can constitute a violation of the Fair Debt

14   Collection Practices Act?

15                   MR. METCHO:   I'm going to object to

16              the question as seeking a conclusion of

17              law.   Mr. Bowers, you can answer if you're

18              able.

19                   THE WITNESS:   I was going to answer

20              in just that way.   I think that is a

21              question of interpretation of the law that

22              is at issue right now and would be decided

23              upon by the Judge and the Court.

24   BY MR. MILZ:

BRIAN BOWERS

1    Q.       Looking at FRS-1, when you collect debts
2    for LVNV Funding, LLC are they consumer or are
3    they commercial debts?
4    A.       By true definition they could be either.
5    Q.       What's FRS' understanding of the debts it
6    collects on behalf of LVNV?  Do they understand
7    them to be commercial debts or consumer debts?
8    A.       We are not provided any distinction in any
9    placement file that it is necessarily a consumer
10   or a commercial debt.  The fact of the matter is
11   that dependent upon how the credit instrument was
12   used, it could be defined as either, which would
13   be yet to be defined.
14   Q.       When collecting debts on behalf of LVNV
15   Funding, does Financial Recoveries Services strive
16   to adhere to the requirements of consumer debt
17   collection laws?
18   A.       Yes, we do.
19   Q.       Are you aware, sir, of LVNV Funding being
20   in the business of purchasing charged-off
21   commercial debts?
22   A.       They can purchase whatever debts they
23   want.  So, yes, they can purchase commercial debts
24   and they can purchase consumer debts if that's

BRIAN BOWERS

1    what they choose to do.

2    Q.      Without getting into anymore particulars

3    than this, are you aware of any provision in your

4    agreement with LVNV related to the collection of

5    debts related to whether the debts you will be

6    collecting are consumer or commercial debts?

7    A.      Not off the top of my head right now.  I'd

8    have to review those contracts.

9            MR. MILZ:  Unless you're going to

10           stipulate that we're talking about

11           commercial use here I need a copy of

12           that.  And I know you're representing

13           LVNV, too.  We would need a copy of the

14           purchase and sale agreements and things of

15           that nature.  Hopefully we can get around

16           that, but --

17           MR. METCHO:  What are you looking

18           for, just to stipulate to the fact that

19           Miss Jewsevskyj's debt was a consumer

20           debt?

21           MR. MILZ:  And the understanding

22           from FRS that it was collecting consumer

23           debts with these communications.

24           MR. METCHO:  All right.  We can talk

BRIAN BOWERS

1          about that after the deposition.  We can

2          stipulate to that effect.

3                MR. MILZ:  If not, we need

4          documentation.

5                MR. METCHO:  Fair enough.

6    BY MR. MILZ:

7    Q.      Is it Financial Recoveries' position in

8    this litigation that in relation to the collection

9    of this debt from Miss Jewsevskyj it was operating

10   as a debt collector as defined by the Fair Debt

11   Collection Practices Act?

12   A.      Yes.

13   Q.      Getting back to the line of questioning I

14   was following up on earlier, over the years have

15   you experimented with placing the 1692(g)

16   validation notice in different spots in your

17   collection letters?

18   A.      We have not experimented with not placing

19   the required language on a notice, on a validation

20   notice.  We have always placed the required

21   language in any initial validation notice.  Has it

22   happened to be in different locations such as the

23   first, second or third paragraph?  Yes, it has.

24   But was there any scientific or rhyme or reason as

BRIAN BOWERS

1    to why it was someplace or some scientific study?

2    No.   It just was placed in a notice where it

3    happened to fit at the time.   And it was always of

4    the same font size and it was always part of the

5    body of the letter so as not to be overshadowed.

6    Q.      Do you keep any statistics on which

7    initial communication templates generate more or

8    less disputes or validation requests from the

9    consumers?

10   A.      No.

11   Q.      Do you know if the outside legal counsel

12   you utilize keeps track of that information?

13   A.      No.

14           MR. METCHO:   I'm going to put an

15           objection on the record regarding that

16           last question regarding the information

17           provided could possibly be subject to the

18           attorney/client privilege.

19           MR. MILZ:   I think that's all I

20           have.

21           MR. METCHO:   I have nothing

22           further.

23           (The deposition was concluded at

24           12:17 p.m.)

```
1                     C E R T I F I C A T I O N

2

3

4          I, Mary Ann Timko, do hereby certify that

5   the proceedings, evidence, and objections noted

6   are contained fully and accurately in the notes

7   taken by me of the preceding deposition; and that

8   this copy is a correct transcription of the same.

9

10

11

12

13   MARY ANN TIMKO
     COURT REPORTER

14

15

16          (The foregoing certification of this

17   transcript does not apply to any reproduction of

18   same by any means unless under the direct control

19   and/or supervision of the certifying reporter.)

20

21

22

23

24
```

EXHIBITS

DEPT 813    8674679315013
PO Box 4115
CONCORD CA  94524

**FINANCIAL RECOVERY SERVICES, INC.**

P.O. Box 385908
Minneapolis, MN  55438-5908
1-877-902-5064

CURRENT CREDITOR: LVNV FUNDING LLC
ORIGINAL CREDITOR: CREDIT ONE BANK, N.A.
REGARDING: MHC RECEIVABLES, LLC
ACCOUNT NUMBER: XXXXXXXXXXXX9706
DATE OF LAST PAYMENT: 02/24/09
CHARGE-OFF DATE: 10/23/09

RETURN SERVICE REQUESTED

January 15, 2015

ALEXANDRA JEWSEVSKYJ
4743 WORTH ST
PHILADELPHIA PA 19124-2813

**BALANCE ITEMIZATION**
PRINCIPAL BALANCE: $558.34
INTEREST BALANCE: $569.66
BALANCE DUE: $1128.00
FRS FILE NUMBER: ███V429
ON-LINE PIN NUMBER: ███192
(Used to access and view your file on  WWW.FIN-REC.COM)

PLEASE BE ADVISED THAT LVNV FUNDING LLC THE CURRENT CREDITOR-DEBT PURCHASER HAS PURCHASED THE ACCOUNT REFERENCED ABOVE AND IT HAS BEEN PLACED WITH OUR OFFICE FOR COLLECTION. AS OF THE DATE OF THIS LETTER, YOU OWE $1128.00. BECAUSE OF INTEREST THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR. THE OPPORTUNITIES LISTED ABOVE DO NOT AFFECT YOUR RIGHTS DESCRIBED BELOW.
WE ARE AUTHORIZED TO OFFER YOU THE OPPORTUNITIES LISTED BELOW:

1   ( )   MY ACCOUNT WILL BE PAID IN FULL BY A ONE-TIME PAYMENT EQUAL TO THE BALANCE; OR
    ( )   MY ACCOUNT WILL BE SETTLED IN FULL BY A ONE-TIME PAYMENT EQUIVALENT TO 40.00% OF THE ABOVE REFERENCED BALANCE IN THE
          AMOUNT OF $451.20; OR
3.  ( )   MY ACCOUNT WILL BE SETTLED IN FULL BY THREE EQUAL CONSECUTIVE MONTHLY PAYMENTS EQUIVALENT TO 50.00% OF THE ABOVE
          REFERENCED BALANCE FOR A TOTAL REPAYMENT OF $564.00; OR
4.  ( )   I WILL MAKE A MONTHLY PAYMENT THAT IS AFFORDABLE TO ME AT THIS TIME AS FOLLOWS, I WILL PAY $_____ MONTHLY UNTIL MY ACCOUNT
          IS PAID IN FULL OR ANOTHER AGREEMENT IS NEGOTIATED. PAYMENTS WILL BE SENT ON OR BEFORE THE _____ OF EACH MONTH.

PLEASE MARK YOUR CHOICE WITH AN "X" IN THE SPACE PROVIDED AND FORWARD WITH YOUR PAYMENT TO THE ADDRESS LISTED BELOW. YOU MAY CONTACT THE REPRESENTATIVE LISTED BELOW WITH ANY QUESTIONS. WE ARE NOT OBLIGATED TO RENEW OFFERS 2 THROUGH 4 ABOVE. FOR OFFERS 2 AND 3 ABOVE, WHEN YOU HAVE SATISFIED THIS AGREEMENT, THE ACCOUNT(S) WILL BE CONSIDERED SETTLED IN FULL FOR LESS THAN THE FULL BALANCE AND YOU WILL BE RELEASED OF ALL LIABILITY RELATIVE TO THE ABOVE LISTED ACCOUNT(S). WE RECOMMEND THAT YOU CONSULT INDEPENDENT TAX COUNSEL OF YOUR OWN CHOOSING IF YOU DESIRE ADVICE ABOUT ANY TAX CONSEQUENCES WHICH MAY RESULT FROM THIS SETTLEMENT.

PLEASE FEEL FREE TO CALL US AT THE TOLL-FREE NUMBER LISTED BELOW. FRS NOW ACCEPTS SOME FORMS OF PAYMENT ONLINE AT WWW.FIN-REC.COM.
SINCERELY,
DAN JAMBOR
ACCOUNT MANAGER
TOLL FREE: 1-877-902-5064

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
**SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**
Office hours are: Monday-Thursday, 7am to 8pm; Friday 7am to 5pm; Saturday 7am to noon.

---

***DETACH AND RETURN THIS PORTION OF THIS NOTICE WITH YOUR PAYMENT***

NOTE: ANY CHECK RETURNED FOR INSUFFICIENT FUNDS OR ACCOUNT CLOSED WILL BE ASSESSED A $15.00 CHARGE.

Amount Enclosed: _____

Home Phone: _____

Work Phone: _____

ALEXANDRA JEWSEVSKYJ
4743 WORTH ST
PHILADELPHIA, PA 19124-2813

PLEASE CHECK YOUR PAYMENT OPTION BELOW:
( ) PAID IN FULL - $1128.00
( ) SETTLED IN FULL - $451.20
( ) SETTLED IN 3 EQUAL PAYMENTS
    TOTALING  $564.00
( ) MONTHLY PAYMENT PLAN OF:
    $_____ BY _____ OF EACH MONTH

FINANCIAL RECOVERY SERVICES, INC.
P.O. BOX 385908
MINNEAPOLIS, MN  55438-5908

**TOTAL BALANCE DUE: $1128.00**

FRS File#: ███429

TOLL FREE: 1-877-902-5064

EXHIBIT
FRS - 1
2-4-16 mat
PENGAD 800-631-6989

FRS092-0114-552309115-02914-2914

We are required under certain State and Local Laws to notify consumers of those States or Localities of the following rights. This list does not contain a complete list of the rights consumers have under Federal, State, or Local Laws.

### ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

### ADDITIONAL INFORMATION FOR COLORADO RESIDENTS

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE  www.coloradoattorneygeneral.gov/ca

COLORADO OFFICE LOCATION: 27 NORTH WILLERUP, SUITE B, MONTROSE, CO 81401
LOCAL PHONE: 970-249-7514 TOLL-FREE PHONE: 1-866-436-4766

A CONSUMER HAS THE RIGHT TO REQUEST IN WRITING THAT A DEBT COLLECTOR OR COLLECTION AGENCY CEASE FURTHER COMMUNICATIONS WITH THE CONSUMER.  A WRITTEN REQUEST TO CEASE COMMUNICATION WILL NOT PROHIBIT THE DEBT COLLECTOR OR COLLECTION AGENCY FROM TAKING ANY OTHER ACTION AUTHORIZED BY LAW TO COLLECT THE DEBT.

### ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS

NOTICE OF IMPORTANT RIGHTS:

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT.  ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST.  YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

IF YOU WISH TO DISCUSS THIS MATTER, PLEASE CALL US DIRECT, BETWEEN THE HOURS OF 8 A.M. AND 5 P.M. CST, AT THE NUMBER LISTED ON THE FRONT OF THIS NOTICE. MASSACHUSETTS RESIDENT OFFICE ADDRESS IS: 5230 WASHINGTON ST, WEST ROXBURY, MA 02132 WITH OFFICE HOURS: M-TH 10AM-3PM.

### ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS

THIS COLLECTION AGENCY IS LICENSED BY THE MINNESOTA DEPARTMENT OF COMMERCE.

### ADDITIONAL INFORMATION FOR NEW YORK CITY RESIDENTS

This collection agency is licensed by the New York City Department of Consumer Affairs. The license number is 1015506.

### ADDITIONAL INFORMATION FOR NORTH CAROLINA RESIDENTS

North Carolina Department of Insurance permit number: 3917.

### ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS

This collection agency is licensed by the Collection Service Board of the State Department of Commerce and Insurance.

### ADDITIONAL INFORMATION FOR WISCONSIN RESIDENTS

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions,  www.wdfi.org.

### NOTICE TO ALL CONSUMERS

Our staff is trained to conduct themselves in a businesslike and professional manner, and to leave you with a positive experience in dealing with our Company.  If you have a complaint, criticism, suggestion, or compliment about the way we are collecting this debt, please write to us at P.O. Box 385908, Minneapolis, MN 55438-5908, email us at compliance@fin-rec.com, submit on-line at www.fin-rec.com, or call us toll-free at (866) 438-2860 between 9am and 5pm CST Monday-Friday.

Federal Law prohibits certain methods of debt collection, and requires that we treat you fairly.  You can stop us from contacting you by writing a letter to us that tells us to stop contact or that you refuse to pay the debt.  Sending such a letter does not make the debt go away if you owe it.  Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action.

The Federal Trade Commission (FTC) and the Consumer Financial Protection Bureau (CFPB) enforces the Fair Debt Collection Practices Act (FDCPA).  If you have an unresolved complaint about the way we are collecting your debt, please contact the ftc online at www.ftc.gov., by phone at 1-877-ftc-help; or by mail at 600 Pennsylvania Ave NW, Washington, DC 20580.  You can reach the CFPB online at www.consumerfinance.gov or by phone at (855) 411-CFPB (2372).

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDRA JEWSEVSKYJ, *on behalf of*
*herself and all others similarly situated,*
Plaintiff,

vs.

FINANCIAL RECOVERY SERVICES,
INC. and

NO. 15-CV-03041-JHS

LVNV FUNDING, LLC
and

CLASS ACTION

RESURGENT CAPITAL SERVICES,
L.P. and

ALEGIS GROUP, LLC
Defendants

## FINANCIAL RECOVERY SERVICES, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Financial Recovery Services, Inc. ("FRS" or "Defendant"), as and for its responses to Plaintiff's First Set of Interrogatories, states, objects and responds as follows:

## INTERROGATORIES

1.     State the name(s), business address(es) and job title(s) or capacity(ies) of the officer(s), employee(s) or agent(s) answering or providing any information used to answer these Interrogatories, and persons with knowledge of the facts raised in the Amended Complaint and Answer.

**Answer:**  Brian Bowers, Defendants CEO/President assisted counsel in responding to Plaintiff's interrogatories.

**Error! Unknown document property name.**



2.    Identify all communications between Defendant and Plaintiff.   For each communication, set forth the date (and, if applicable the time) of the communication, the method of communication (e.g., telephone call, letter, etc.), who initiated the communication, to whom the communication was made, the employee or representative of Defendant who made the communication, and specifically what was communicated and/or said by each participant in the communication; and attach a copy of any documents (including any sound recordings) which relate to this interrogatory and your response.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as beyond the scope of this matter, as Plaintiff's claim is solely premised the receipt of FRS' letter dated January 15, 2015. Subject to and without waiving said objections, Defendant refers Plaintiff to its January 15, 2015 letter, which was sent to Plaintiff by FRS, via FRS' letter service provider, CompuMail, Inc.

3.    Identify who drafted the template used to generate the January 15, 2015 letter attached to the Amended Class Complaint sent to Plaintiff and substantially similar letters to the Class, and attach all documents which relate to your answer.

**Answer:** Brian Bowers, drafted the letter.

4.    Identify every person with knowledge of facts that bear on the accuracy or inaccuracy of the allegations of the Amended Class Complaint and set forth in detail that person's knowledge; attach any documents which relate to this interrogatory and your response.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

Error! Unknown document property name.

Subject to and without waiving said objections, Defendant states that each named party has knowledge as to the accuracy of the allegations.

5.     Identify any and all documents in your possession, including electronic documents such as emails, which address or bear upon the size, font, readability, placement and/or format of the validation rights notice (contemplated by 15 U.S.C. §1692g) utilized in your collection letters, and attach all documents which relate to your answer.

**Answer:**  Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Defendant is not in possession of any documents indicating that the font sized used in the letter at issue was not appropriate.

6.     Identify all other claims or lawsuits by any consumer or administrative agency against Defendant concerning the placement and size of the validation rights notice (contemplated by 15 U.S.C. §1692g) utilized in your collection letters, and attach all documents which relate to your answer.

**Answer:**  Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as calling for information available to Plaintiff via online records.  Subject to and without waiving said objections, Defendant does not recall any other lawsuits asserting that its placement or font size of the validation notice was in violation of the FDCPA.

7.     State the name and address of Defendant's liability insurer for the last three years and the dates of coverage, type, and policy numbers of each liability insurance policy.

**Error! Unknown document property name.**

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as it has not tendered the defense of this claim to any insurance provider.

8.    Describe the procedures utilized by Defendant to avoid violation of the Fair Debt Collection Practices Act related to the placement and size of the validation rights notice (contemplated by 15 U.S.C. §1692g) and attach any documents which relate to this interrogatory and your response.

**Answer:** Defendant drafts letters that complies with the FDCPA and then the letters are vetted by collection notice review counsel authorized by ACA International.

9.    Identify all individuals Defendant intends to call at a hearing or trial in this matter, including any expert witness, and set forth the basis of each person's proposed testimony; attach any documents which relate to this interrogatory and your response.

**Answer:** Defendant objects to this request as premature. Subject to and without waiving said objections, Defendant anticipates calling Plaintiff and Brian Bowers. Discovery continues and FRS reserves the right to supplement this response.

10.    Please state the factual basis for any affirmative defenses asserted by Defendant.

**Answer:** Defendant refers Plaintiff to these responses and states that any affirmative defense speaks for itself.

11.    Identify all experts, consulted or retained in this matter, their curriculum vitaes, and identify the full basis for any opinion.

**Answer:** None at this time. Discovery continues.

**Error! Unknown document property name.**

AS TO INTERROGATORY RESPONSES:

Brian Bowers

Sworn to and subscribed to before me this 29th day of January, 2016

Notary Public

SAMANTHA ANN RIBELIN
Notary Public-Minnesota
My Commission Expires Jan 31, 2020

Error! Unknown document property name.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDRA JEWSEVSKYJ, *on behalf of*
*herself and all others similarly situated,*
                Plaintiff,

    vs.

FINANCIAL RECOVERY SERVICES,        NO. 15-CV-03041-JHS
    INC. and

LVNV FUNDING, LLC               CLASS ACTION
    and

RESURGENT CAPITAL SERVICES,
    L.P. and

ALEGIS GROUP, LLC
              Defendants

## FINANCIAL RECOVERY SERVICES, INC.'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Financial Recovery Services, Inc. ("FRS" or "Defendant"), as and for its responses to Plaintiff's First Request for Production of Documents, states, objects and responds as follows:

## DOCUMENTS TO BE PRODUCED

1.    All documents identified or required to be identified in Defendant's Rule 26 Disclosures.

**Answer:** Defendant refers Plaintiff to its letter attached to Plaintiff's Complaint and the documents it filed as Doc. No. 7-2.

2.    All documents, including electronic documents, which address or bear on the creation, design and sending of the January 15, 2015 collection letter attached as Exhibit A to the Amended Class Complaint.

EXHIBIT

FRS - 3

2-4-16 mat

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.      All documents, including any policies or procedures, which address or bear on the creation, design and sending of the January 15, 2015 collection letter attached as Exhibit A to the Amended Class Complaint.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

4.      All documents, including policies or procedures, which address or bear upon the creation and design of the letter template used to create the January 15, 2015 collection notice attached as Exhibit A to the Amended Class Complaint.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

5.      All documents, including policies or procedures, which address or bear upon the size, font, readability, placement and/or format of the validation notice (as required by 15 U.S.C. §1692g) in your collection letters.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, FRS does not possess documents responsive to this request as font and size are not referenced or dictated by 15 U.S.C. § 1692g.

6.       All documents provided to you by any of the other defendants which address or bear upon the size, font, readability, placement and/or format of the validation notice (as required by 15 U.S.C. §1692g) in your collection letters.

**Answer:** None. No other defendant had any control over the creation of and use of the letter herein at issue.

7.       Any and all correspondence between Defendant and Plaintiff.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as beyond the scope of this matter, as Plaintiff's claim is solely premised the receipt of FRS' letter dated January 15, 2015. Subject to and without waiving said objections, Defendant refers Plaintiff to its January 15, 2015 letter.

8.       Emails, tapes, records and logs of <u>any</u> communications between you and Plaintiff.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as beyond the scope of this matter, as Plaintiff's claim is solely premised the receipt of FRS' letter dated January 15, 2015. Subject to and without waiving said objections, Defendant refers Plaintiff to its January 15, 2015 letter.

9.       Emails, tapes, records and logs of <u>any</u> communications between you and others in connection with the debt claimed due from Plaintiff.

**Answer:** Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as beyond the scope of this matter, as Plaintiff's claim is solely premised the receipt of FRS' letter dated January 15, 2015. Subject to and

without waiving said objections, Defendant refers Plaintiff to the collection notes attached hereto, which include the information provided by Resurgent Capital Services to Defendant at placement of the account at issue.

10.    Your file(s) containing any documents relating to Plaintiff or the collection of Plaintiff's account claimed due.

Answer:  Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as beyond the scope of this matter, as Plaintiff's claim is solely premised the receipt of FRS' letter dated January 15, 2015.  Subject to and without waiving said objections, Defendant refers Plaintiff to its January 15, 2015 letter and its collection notes.

11.    All internal and external documents relating to your policy and practices of insuring compliance with the validation notice requirements of the Fair Debt Collection Practices Act ("FDCPA").

Answer:  None, as it relates to Plaintiff's claim.

12.    Attach hereto a copy of each document constituting or evidencing all lawsuits or administrative actions against you filed in the last five years which allege violations of the FDCPA § 1692g, and any decisions reached in each action.

Answer:  Defendant objects to this request as overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request as calling for information available to Plaintiff via online records.  Subject to and without waiving said objections, Defendant does not recall any other lawsuits asserting that its placement or font size of the validation notice was in violation of the FDCPA.

13.     All expert reports and all documents furnished to or relied upon by any expert.

**Answer:** None at this time. Discovery continues.

14.     All documents you intend to introduce at trial.

**Answer:** Defendant anticipates introducing its letter and any exhibits it has filed in this matter to date. Discovery continues.

15.     All witness statements.

**Answer:** None at this time. Discovery continues.

16.     Any and all documents which were used to, referred to, relied upon or related to Defendant's Responses to Plaintiff's Interrogatories.

**Answer:** Defendant refers Plaintiff to its collection letter at issue and exhibits filed as Doc. No. 7-2.


MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.

RONALD M. METCHO
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2595 / (215) 575-0856 (f)
rmmetcho@mdwcg.com
Attorneys for Defendants
Financial Recovery Services, Inc.

Dated: February 3, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDRA JEWSEVSKYJ, *on behalf of*
*herself and all others similarly situated*,
　　　　　　　　　Plaintiff,

　　vs.

FINANCIAL RECOVERY SERVICES,
　　　　INC. and

LVNV FUNDING, LLC
　　　and

RESURGENT CAPITAL SERVICES,
　　　L.P. and

ALEGIS GROUP, LLC
　　　　　　　　Defendants

NO. 15-CV-03041-JHS

CLASS ACTION

## CERTIFICATE OF SERVICE

I, Ronald M. Metcho, Esq. do hereby certify that Defendant, Financial Recovery Services, Inc.'s Responses and Objections to Plaintiff's First Set of Requests for Production of Documents was served on the below listed counsel for Plaintiff via electronic mail and U.S. mail on February 3, 2016.

Andrew M. Milz, Esq.
Flitter Milz, PC
450 N. Narberth Ave, Suite 101
Narberth, PA  19072
amilz@consumerslaw.com

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.

RONALD M. METCHO
Attorneys for Defendants
Financial Recovery Services, Inc.

FRS003-0302-571451083-00336-336

DEPT 813    4634307215039
PO BOX 4115
CONCORD CA  94524

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**FINANCIAL RECOVERY SERVICES, INC.**

P.O. Box 385908
**Minneapolis, MN  55438-5908**
1-866-472-0312

CURRENT CREDITOR: LVNV FUNDING LLC
ORIGINAL CREDITOR: CREDIT ONE BANK, N.A.
REGARDING: MHC RECEIVABLES, LLC
ACCOUNT NUMBER: XXXXXXXXXXXX9706
DATE OF LAST PAYMENT: 02/24/09
CHARGE-OFF DATE: 10/23/09
DATE FIRST DELINQUENT: 04/22/09

RETURN SERVICE REQUESTED

March 3, 2015

|||||||||||||||||||||||||||||||||||||||||||||||

ALEXANDRA JEWSEVSKYJ
4743 WORTH ST
PHILADELPHIA PA 19124-2813



**BALANCE ITEMIZATION**
PRINCIPAL BALANCE: $558.34
INTEREST BALANCE: $569.66
BALANCE DUE: $1128.00
FRS FILE NUMBER: ●●●●●29
ON-LINE PIN NUMBER: ●●●●●192
(Used to access and view your file on  WWW.FIN-REC.COM)

As of the date of this notice you owe $1,●●●●●. ●● ●●●●●●orized to offer you the following options:

1. (   ) Our office will allow you to settle your account for 40.00% of the above referenced balance for a total 1 time lump sum ●●●●●●● ●●●●●●● ●●●●●● ●● request this payment within 35 days after receipt of this letter. If you need additional time to respond to this offer, please contact us. Upon receipt and clearance of the payment of $451.20, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account.  We are not obligated to renew this offer. ; or

2. (   ) Our office will allow you to settle your account for 45.00% of the above referenced balance for a total payment of $507.60.  You can pay this in 2 payments and we request the first payment within 35 days after receipt of this letter and the payments can be no more than 30 days apart. If you need additional time to respond to this offer, please contact us. Upon receipt and clearance of these two payments of $253.80, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account. We are not obligated to renew this offer. ; or

3. (   ) Our office will allow you to settle your account for 50.00%  of the above referenced balance for a total payment of $564.00.  You can pay this in 3 payments and we request the first payment within 35 days after receipt of this letter and the payments can be no more than 30 days apart.  If you need additional time to respond to this offer, please contact us.  Upon receipt and clearance of these three payments of $188.00, this account will be considered settled in full for less than the full balance and you will be released of all liability to the creditor relative to the above listed account.  We are not obligated to renew this offer.

(   ) settlement offers may have tax consequences.  We recommend that you consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement.  FRS is not a law firm and FRS will not initiate any legal proceedings or provide you with legal advice.  The offers of settlement in this letter are merely offers to resolve your account for less than the balance due.

For assistance, please feel free to call us at the toll free number listed below or use our online consumer help desk.  FRS now accepts some forms of payment online at www.fin-rec.com.  See your online access PIN above.  If you are sending your payment by overnight delivery, please use the following address:  4510 W. 77th St., Suite 200, Edina, MN 55435

Sincerely,
KEVIN OMBARA
Account Manager
Toll Free: 1-866-472-0312

This is an attempt to collect a debt. Any information obtained will be used for that purpose.  This communication is from a debt collector.  See reverse side for important information.  Office hours are: Monday-Thursday, 7am to 8pm; Friday 7am to 5pm; Saturday 7am to noon.  See reverse side for more information.



EXHIBIT
FRS-5
2-4-16 maj

NOTE:  ANY CHECK RETURNED FOR INSUFFICIENT FUNDS OR ACCOUNT CLOSED WILL BE ASSESSED A $15.00 CHARGE.

*Detach Coupon And Mail Payment*

| 1 OF 3 | 2 OF 3 | 3 OF 3 |
|---|---|---|
| FRS File #: ●●●●●9 | FRS File #: ●●●●●429 | FRS File #: ●●●●●9 |
| |||||||||||||||||| | |||||||||||||||||| | |||||||||||||||||| |
| 1-866-472-0312 | 1-866-472-0312 | 1-866-472-0312 |
| Current Balance: $1128.00 | Current Balance: $1128.00 | Current Balance: $1128.00 |
| Amount enclosed:_____ | Amount enclosed:_____ | Amount enclosed:_____ |
| Home phone:_____ | Home phone:_____ | Home phone:_____ |
| Work phone:_____ | Work phone:_____ | Work phone:_____ |
| Cell phone:_____ | Cell phone:_____ | Cell phone:_____ |
| Financial Recovery Services, Inc. | Financial Recovery Services, Inc. | Financial Recovery Services, Inc. |
| P.O. Box 385908 | P.O. Box 385908 | P.O. Box 385908 |
| Minneapolis, MN 55438-5908 | Minneapolis, MN 55438-5908 | Minneapolis, MN 55438-5908 |
| Letter Code Sent: 093 | Letter Code Sent: 093 | Letter Code Sent: 093 |

FRS093-0302-571451063-00336-336

We are required under certain State and Local Laws to notify consumers of those States or Localities of the following rights. This list does not contain a complete list of the rights consumers have under Federal, State, or Local Laws.

## ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

## ADDITIONAL INFORMATION FOR COLORADO RESIDENTS

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/ca

COLORADO OFFICE LOCATION: 27 NORTH WILLERUP, SUITE B, MONTROSE, CO 81401
LOCAL PHONE: 970-249-7514 TOLL-FREE PHONE: 1-866-436-4766

A CONSUMER HAS THE RIGHT TO REQUEST IN WRITING THAT A DEBT COLLECTOR OR COLLECTION AGENCY CEASE FURTHER COMMUNICATIONS WITH THE CONSUMER. A WRITTEN REQUEST TO CEASE COMMUNICATION WILL NOT PROHIBIT THE DEBT COLLECTOR OR COLLECTION AGENCY FROM TAKING ANY OTHER ACTION AUTHORIZED BY LAW TO COLLECT THE DEBT.

## ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS

NOTICE OF IMPORTANT RIGHTS:

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.
IF YOU WISH TO DISCUSS THIS MATTER, PLEASE CALL US DIRECT, BETWEEN THE HOURS OF 8 A.M. AND 6 P.M. CST, AT THE NUMBER LISTED ON THE FRONT OF THIS NOTICE. MASSACHUSETTS RESIDENT OFFICE ADDRESS IS: 5230 WASHINGTON ST, WEST ROXBURY, MA 02132 WITH OFFICE HOURS: M-TH 10AM-3PM.

## ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS

THIS COLLECTION AGENCY IS LICENSED BY THE MINNESOTA DEPARTMENT OF COMMERCE.

## ADDITIONAL INFORMATION FOR NEW YORK CITY RESIDENTS

This collection agency is licensed by the New York City Department of Consumer Affairs. The license number is 1015506.

## ADDITIONAL INFORMATION FOR NORTH CAROLINA RESIDENTS

North Carolina Department of Insurance permit number: 3917.

## ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS

This collection agency is licensed by the Collection Service Board of the State Department of Commerce and Insurance.

## ADDITIONAL INFORMATION FOR WISCONSIN RESIDENTS

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions.

## NOTICE TO ALL CONSUMERS

Our staff is trained to conduct themselves in a businesslike and professional manner, and to leave you with a positive experience in dealing with our Company. If you have a complaint, criticism, suggestion, or compliment about the way we are collecting this debt, please write to us at P.O. Box 385908, Minneapolis, MN 55438-5908, email us at compliance@fin-rec.com, submit on-line at www.fin-rec.com, or call us toll-free at (866) 236-2817 between 9am and 5pm CST Monday-Friday.

Federal Law prohibits certain methods of debt collection, and requires that we treat you fairly. You can stop us from contacting you by writing a letter to us that tells us to stop contact or that you refuse to pay the debt. Sending such a letter does not make the debt go away if you owe it. Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action.

The Federal Trade Commission (FTC) and the Consumer Financial Protection Bureau (CFPB) enforces the Fair Debt Collection Practices Act (FDCPA). If you have an unresolved complaint about the way we are collecting your debt, please contact the ftc online at www.ftc.gov, by phone at 1-877-ftc-help; or by mail at 600 Pennsylvania Ave NW, Washington, DC 20580. You can reach the CFPB online at www.consumerfinance.gov or by phone at (855) 411-CFPB (2372).

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

07/02/2011 03:28 FAX

Case 2:11-cv-06520-WJM-MF   Document 1   Filed 11/04/11   Page 13 of 13 PageID: 13 @002

DEPT 813    888006611066

PO BOX 4115
CONCORD CA 94524

**FINANCIAL RECOVERY SERVICES, INC.**
P.O. Box 385908
Minneapolis, MN 55438-5908
1-866-415-2398

Return Service Requested

June 13, 2011

JOSEPH ARDINO
475 RAGLAND DR
ROSELLE PARK NJ 07204-2417

CLIENT: DELL FINANCIAL SERVICES, 001-TEST
CURRENT CREDITOR: DELL FINANCIAL SERVICES L.L.C.
REGARDING: DELL FINANCIAL SERVICES L.L.C.
ACCOUNT NUMBER: XXXXXXXXXXXXXXXX6994
BALANCE: $2854.04

## ******INITIAL NOTIFICATION******

THE ACCOUNT(S) LISTED ABOVE HAVE BEEN ASSIGNED TO THIS AGENCY FOR COLLECTION. WE ARE A PROFESSIONAL COLLECTION AGENCY ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED AS A BASIS TO ENFORCE COLLECTION OF THIS DEBT.

YOU OWE $2854.04. FOR FURTHER INFORMATION, WRITE THE UNDERSIGNED OR CALL 1-866-415-2398. UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS COMMUNICATION IS FROM A DEBT COLLECTION AGENCY LICENSED BY THE MINNESOTA DEPARTMENT OF COMMERCE.

SINCERELY,

JAMIE VANHALL
ACCOUNT MANAGER
TOLL FREE: 1-866-415-2398

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Office hours are: Monday-Thursday, 7am to 8pm; Friday 7am to 6pm; Saturday 7am to noon.

***DETACH AND RETURN THIS PORTION OF THIS NOTICE WITH YOUR PAYMENT***

NOTE: ANY CHECK RETURNED FOR INSUFFICIENT FUNDS OR ACCOUNT CLOSED WILL BE ASSESSED A $15.00 CHARGE.

AMOUNT ENCLOSED:_____

HOME PHONE:_____

WORK PHONE:_____

TOTAL BALANCE DUE: $2854.04

FRS File#: _____

FINANCIAL RECOVERY SERVICES, INC.
P.O. BOX 385908
MINNEAPOLIS, MN 55438-5908

TOLL FREE: 1-866-415-2398
JOSEPH ARDINO
475 RAGLAND DR
ROSELLE PARK NJ 07204-2417

EXHIBIT
FRS-6
2-14-16 mat

EXHIBIT
1

DEPT 813
PO BOX 4115
CONCORD CA  94524

**FINANCIAL RECOVERY SERVICES, INC.**
P.O. Box 385908
Minneapolis, MN  55438-5908
1-877-902-5064

RETURN SERVICE REQUESTED

October 18, 2012

CLIENT: RESURGENT CAPITAL SERVICES LP
CURRENT CREDITOR: ASCENT CARD SERVICES LLC
ORIGINAL CREDITOR: PLAINS COMMERCE BANK
REGARDING: PLAINS COMMERCE BANK
ACCOUNT NUMBER:
DATE OF LAST PAYMENT:
CHARGE-OFF DATE:

BALANCE ITEMIZATION
PRINCIPAL BALANCE:
INTEREST BALANCE:
BALANCE DUE:
ON-LINE PIN NUMBER:
(Used to access and view your file on  WWW.FIN-REC.COM)

PLEASE BE ADVISED THAT ASCENT CARD SERVICES LLC THE CURRENT CREDITOR-DEBT PURCHASER HAS PURCHASED THE ACCOUNT REFERENCED ABOVE. THE CURRENT SERVICER OF THE ACCOUNT, RESURGENT CAPITAL SERVICES LP, HAS PLACED IT WITH THIS AGENCY FOR COLLECTION.

AS OF THE DATE OF THIS LETTER, YOU OWE      . BECAUSE OF INTEREST THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION.

WE ARE AUTHORIZED TO OFFER YOU THE OPPORTUNITIES LISTED BELOW:

1. ( )  MY ACCOUNT WILL BE PAID IN FULL BY A ONE-TIME PAYMENT EQUAL TO THE BALANCE; OR

2. ( )  MY ACCOUNT WILL BE SETTLED IN FULL BY A ONE-TIME PAYMENT EQUIVALENT TO 50.00% OF THE ABOVE REFERENCED BALANCE IN THE AMOUNT OF $      ; OR

3. ( )  MY ACCOUNT WILL BE SETTLED IN FULL BY THREE (3) CONSECUTIVE MONTHLY PAYMENTS EQUIVALENT TO 65.00% OF THE ABOVE REFERENCED BALANCE FOR A TOTAL REPAYMENT OF      ; OR

   ( )  I WILL MAKE A MONTHLY PAYMENT THAT IS AFFORDABLE TO ME AT THIS TIME AS FOLLOWS, I WILL PAY $ _____ MONTHLY UNTIL MY ACCOUNT IS PAID IN FULL OR ANOTHER AGREEMENT IS NEGOTIATED.  PAYMENTS WILL BE SENT ON OR BEFORE THE _____ OF EACH MONTH.

PLEASE MARK YOUR CHOICE WITH AN "X" IN THE SPACE PROVIDED AND FORWARD WITH YOUR PAYMENT TO THE ADDRESS LISTED BELOW. YOU MAY CONTACT THE REPRESENTATIVE LISTED BELOW WITH ANY QUESTIONS. WE ARE NOT OBLIGATED TO RENEW OFFERS 2 THROUGH 4 ABOVE. THE OPPORTUNITIES LISTED ABOVE DO NOT AFFECT YOUR RIGHTS DESCRIBED BELOW.

IF YOU HAVE ANY QUESTIONS OR WISH TO DISCUSS YOUR ACCOUNT WITH ONE OF OUR REPRESENTATIVES PLEASE CALL US AT THE TOLL FREE NUMBER LISTED BELOW OR USE OUR ONLINE CONSUMER HELP DESK. FRS NOW ACCEPTS SOME FORMS OF PAYMENT ONLINE AT WWW.FIN-REC.COM.

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

SINCERELY,
ROY KIMAL
ACCOUNT MANAGER
TOLL FREE: 1-877-902-5064

THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
SEE REVERSE SIDE FOR IMPORTANT INFORMATION.
Office hours are: Monday-Thursday, 7am to 8pm; Friday 7am to 5pm; Saturday 7am to noon.

EXHIBIT
FRS-7
2.4-16 mat

***DETACH AND RETURN THIS PORTION OF THIS NOTICE WITH YOUR PAYMENT***

NOTE:  ANY CHECK RETURNED FOR INSUFFICIENT FUNDS OR ACCOUNT CLOSED WILL BE ASSESSED A $15.00 CHARGE.

Amount Enclosed: _____

Home Phone: _____

Work Phone: _____

PLEASE CHECK YOUR PAYMENT OPTION BELOW:
( ) PAID IN FULL -
( ) SETTLED IN FULL -
( ) SETTLED IN 3 EQUAL PAYMENTS TOTALING -
( ) MONTHLY PAYMENT PLAN OF:
$ _____ BY _____ OF EACH MONTH

FINANCIAL RECOVERY SERVICES, INC.
P.O. BOX 385908
MINNEAPOLIS, MN  55438-5908

TOTAL BALANCE DUE:

FRS File#:

TOTAL FREE: ____-5064

We are required under certain State and Local Laws to notify consumers of those States or Localities of the following rights. This list does not contain a complete list of the rights consumers have under Federal, State, or Local Laws.

## ADDITIONAL INFORMATION FOR CALIFORNIA RESIDENTS

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

## ADDITIONAL INFORMATION FOR COLORADO RESIDENTS

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/ca

COLORADO OFFICE LOCATION: 717 17TH STREET, SUITE 2300, DENVER, CO 80202. PHONE: 1-866-436-4766

A CONSUMER HAS THE RIGHT TO REQUEST IN WRITING THAT A DEBT COLLECTOR OR COLLECTION AGENCY CEASE FURTHER COMMUNICATIONS WITH THE CONSUMER. A WRITTEN REQUEST TO CEASE COMMUNICATION WILL NOT PROHIBIT THE DEBT COLLECTOR OR COLLECTION AGENCY FROM TAKING ANY OTHER ACTION AUTHORIZED BY LAW TO COLLECT THE DEBT.

## ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS

NOTICE OF IMPORTANT RIGHTS:

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

IF YOU WISH TO DISCUSS THIS MATTER, PLEASE CALL US DIRECT, BETWEEN THE HOURS OF 8 A.M. AND 5 P.M. CST, AT THE NUMBER LISTED ON THE FRONT OF THIS NOTICE. MASSACHUSETTS RESIDENT OFFICE ADDRESS IS: 5230 WASHINGTON ST, WEST ROXBURY, MA 02132 WITH OFFICE HOURS: M-TH 10AM-3PM.

## ADDITIONAL INFORMATION FOR MINNESOTA RESIDENTS

THIS COLLECTION AGENCY IS LICENSED BY THE MINNESOTA DEPARTMENT OF COMMERCE.

## ADDITIONAL INFORMATION FOR NEW YORK CITY RESIDENTS

This collection agency is licensed by the New York City Department of Consumer Affairs. The license number is 1015506.

## ADDITIONAL INFORMATION FOR NORTH CAROLINA RESIDENTS

North Carolina Department of Insurance permit number: 3917.

## ADDITIONAL INFORMATION FOR TENNESSEE RESIDENTS

This collection agency is licensed by the Collection Service Board of the State Department of Commerce and Insurance.

## ADDITIONAL INFORMATION FOR WISCONSIN RESIDENTS

This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

## NOTICE TO ALL CONSUMERS

Our staff is trained to conduct themselves in a businesslike and professional manner, and to leave you with a positive experience in dealing with our Company. Please call (866) 438-2860 with your criticisms, complaints, suggestions and compliments. To discuss the account, please call the number on the front of this letter.